ROBERT J. WESTERFIELD, Respondent, *v.* JAMES C. FARGO, President of the National Express Company, Appellant.

(County Court, Rockland County, March, 1913.)·

Carriers — carriage of goods — receipt containing the terms and conditions on which the property is to be carried — contracts — waiver of condition.

Sales — purchase of goods — liability of express company for any loss, damage or delay — damages.

Where a shipper of property by express accepts from the carrier, without objection, a receipt which embodies the terms and conditions on which the property is to be carried, and which by operation of law constitutes the contract between the parties, the shipper, in the event of loss of the property or its delay in transit, is not entitled to recover against the carrier unless he alleges and proves, as a condition precedent, that he has himself complied with all the provisions and requirements of the contract.

Where a plaintiff desires to plead a waiver by defendant of any condition with which it has not complied, he must allege said condition and the facts and circumstances constituting the waiver thereof.

Where plaintiff, having purchased certain goods to sell at retail, delivered them to defendant, an express company, for transportation, and in an action to recover damages for the nondelivery of the goods the proof is that plaintiff failed to comply with the condition of the shipping receipt accepted by him from defendant that " In no event shall this company be liable for any loss, damage or delay, unless the claim therefor shall be presented to it in writing at this office within ninety days after date of shipment, in a statement to which this receipt shall be annexed," he is not entitled to recover, and a judgment in his favor will be reversed.

Where, in the absence of any allegation of special damage, plaintiff was allowed to recover the original cost of the goods, together with an anticipated profit of more than three hundred per cent., and plaintiff was permitted to testify as to what he

paid for the goods in bulk, and both he and another testified, over defendant's objection, to the prices at which they had retailed similar goods the previous year, the reception of such evidence is reversible error, as the true measure of plaintiff's damages, had he been entitled to recover, would have been the value of the goods at the place of delivery, with interest.

APPEAL from a judgment of a justice's court rendered in favor of defendant.

John E. Sickels (John S. Sickels, of counsel), for appellant.

Benjamin Levison, for respondent.

MCCAULEY, J. The defendant has appealed to this court from a judgment which the plaintiff recovered against it in a justice's court for damages for the loss or nondelivery of an express package. The trial was without a jury. The package was delivered to the defendant, which is a common carrier of goods for hire, at West Nyack, in this county, on the 25th day of September, 1911, for transportation to Pittsfield, Mass. It contained paper shakers which the plaintiff had purchased at Boston for the purpose of sale at retail at a county fair held at Great Barrington. The defendant, at the hands of its agent, delivered to the plaintiff, at the time of the shipment, a receipt for the package which, as it claims, embodied the terms and conditions of the contract under which it received and engaged to transport the package, and to which terms and conditions the plaintiff assented. The package did not arrive at its destination and was not delivered to the plaintiff and, presumably, was lost in transit.

The action was defended, and a reversal of the judgment is now asked for upon the ground that the defendant had been relieved of responsibility for the loss or nondelivery of the package by reason of

the plaintiff's failure to observe one of the provisions of the shipping receipt. The receipt was prepared by using a printed form and, when completed by filling in the written portions, was signed by the defendant's agent and delivered to the plaintiff, who accepted it without objection.

It is stated in the receipt that the defendant undertook to forward the package " subject to the terms and conditions printed below, and which terms and conditions are agreed to by shipper and owner in accepting this receipt." One of the terms and conditions mentioned in the receipt, with which the plaintiff failed to comply, and by reason of which the defendant asserts that it is absolved from any liability for the loss or nondelivery of the package, is the following: " In no event shall this company be liable for any loss, damage or delay, unless the claim therefor shall be presented to it in writing at this office within ninety days after date of shipment, in a statement to which this receipt shall be annexed."

We are therefore asked to determine, as the more important question presented by the appeal, the legal effect of the shipping receipt upon the rights and responsibilities of the parties.

The giving of a receipt or bill of lading by a common carrier to a shipper, upon the delivery of goods for transportation, containing the terms and conditions upon which they are to be carried, is in the usual course of business. It is not claimed that the defendant's agent practiced any fraud or deceit; nor indeed that he did or said anything that was calculated to mislead the plaintiff, or put him off his guard.

The plaintiff admitted the delivery of the receipt to him at the time of shipment; but he does not testify that he read it, or that he failed to acquaint himself with its provisions. Nor does it appear that he was

interrogated concerning his knowledge of its provisions. It was manifestly his duty to read the receipts, so that he might know what the defendant undertook to do in respect of his package; in other words what its duties and responsibilities were. In any event the plaintiff is chargeable with knowledge of its provisions; for the defendant had the right to infer from his acceptance of the receipt without dissent that he assented to its terms.

We think it may justly be assumed that the plaintiff did read the receipt and was familiar with its provisions, for it remained in his possession, and was produced by him upon the trial; and also because the amended complaint contains an averment that on or about September 29, 1911, he caused to be sent to the defendant's agent at Pittsfield a written statement setting forth his claim and the loss thereby sustained. It should be remarked, however, that there was no evidence to support this averment. The plaintiff testified that, having shipped the package, he went to Pittsfield, and that upon his arrival there, or shortly thereafter, he on two occasions made inquiry of the defendant's agent concerning the package, and on each occasion was informed that it had not yet arrived. He returned to West Nyack a few days later, and thereupon addressed a letter to the agent at Pittsfield which, as he testified, read about as follows: "Regarding those paper shakers. If you receive the package kindly forward it to West Nyack, and if not will hold company responsible."

This was the only written statement which the plaintiff presented or caused to be presented to the agent at Pittsfield; and it is conceded that he presented no written claim for loss of the package either to the defendant or its agent at West Nyack.

It will thus be seen that the plaintiff did not comply

or attempt to comply with the provision of the receipt above quoted.

Shipping receipts of the general nature of the one in question have been the subject of frequent consideration by the courts, and the principle is now well established that where a shipper of property takes from the carrier without objection a receipt, bill of lading or other voucher expressing the terms and conditions upon which the property is to be transported, the writing, in the absence of proof of fraud, misrepresentation or concealment, must be taken as the evidence, and the sole evidence, of the final agreement of the parties, and by it their duties and responsibilities must be regulated; and that the shipper cannot overcome its legal effect by failing to read it, or acquaint himself with its contents. Knapp v. Wells, Fargo & Co., 134 App. Div. 712; Hoffman v. Metropolitan Express Co., 111 id. 407; Hinckley v. N. Y. C. & H. R. R. R. Co., 56 N. Y. 429; Belger v. Dinsmore, 51 id. 166; Kirkland v. Dinsmore, 62 id. 179; Germania Fire Ins. Co. v. Memphis & C. R. R. Co., 72 id. 90; Hill v. Syracuse, B. & N. Y. R. R. Co., 73 id. 351; Mills v. Weir, 82 App. Div. 396.

Where, therefore, a shipper of property by express accepts from the carrier, without objection, a shipping receipt which embodies the terms and conditions upon which the property is to be carried and which, by operation of law, constitutes the contract between the parties, he is not entitled, in the event of loss or delay in transit, to recover against the carrier unless he allege and prove that he has himself complied with all its provisions and requirements. Todd v. Union Casualty & Surety Co., 70 App. Div. 55. Such compliance on the part of the shipper is a condition precedent to his right of recovery against the carrier.

The learned counsel for the respondent argues, however, that if the shipping receipt is held to be the

repository of the agreement between the parties, nevertheless the judgment should be upheld upon the ground that the defendant waived a strict compliance with its provisions on the part of the plaintiff.

It is a sufficient answer to this argument to say that there is no allegation of waiver in the complaint. The rule is well settled that, if the plaintiff desires to plead a waiver by the defendant of any condition with which he has not complied, he must allege the condition claimed to have been waived, and the facts and circumstances constituting such waiver. Frey v. N. Y. C. & H. R. R. Co., 114 App. Div. 747; Pope Manfg. Co. v. Rubber Goods Manfg. Co., 110 id. 341; Todd v. Union Casualty & Surety Co., *supra;* Glazer v. Home Ins. Co., 48 Misc. Rep. 515. Moreover, if a waiver had been alleged there was no evidence whatever to sustain it. Indeed it appears from the evidence of plaintiff's own witness that when, upon his return from Pittsfield, he called the attention of the defendant's agent at the West Nyack station to the fact that the package had not been delivered, he was told that '' the only thing to do was to put in a claim to the express company.''

The plaintiff has been allowed to recover, without alleging special damages, the original cost of the goods, together with an anticipated profit of more than 300 per cent., upon the theory, we presume, that if the goods had been delivered to him at Pittsfield he could have retailed them at the fair at Great Barrington for a price that would have yielded that profit. There is no evidence that the defendant had any knowledge or notice of the specific use to which the goods were to be put. Indeed, there is no proof that it knew at the time of shipment the character of the goods which the package contained; nor is there any evidence that the plaintiff had ever sold any such goods at Great Barrington, or that there was any demand for them at that place.

Whether he could have sold the goods or any of them, and at what prices, was purely problematical.

The plaintiff was allowed to testify to the price which he paid for the goods in bulk; and both he and another witness were allowed to testify, over the defendant's objection and exception, to the prices at which they had retailed similar goods at county fairs in the year 1910. It was upon their evidence, given in response to these questions, that a profit of more than 300 per cent. was added to the original cost of each article, in awarding the damages.

This was an obvious error. The true measure of the plaintiff's damages, had he been entitled to a recovery, was the value of the goods at the place of delivery, with interest. There was no stipulation in the receipt changing the legal rule.

In Brown v. Weir, 95 App. Div. 78, which was an action against a common carrier for nondelivery of a trunk, WOODWARD, J., states the rule as follows: '' Damages for breach of a contract are only those which are incidental to, and directly caused by, the breach, and may reasonably be presumed to have entered into the contemplation of the parties; and not speculative profits, or accidental or consequential losses. Citing Hamilton v. McPherson, 28 N. Y. 72-77, and authorities there cited; Allen v. McConihe, 124 id. 342-347, and authorities there cited; Rochester Lantern Co. v. S. & P. P. Co., 135 id. 209-217, and authorities there cited,'' and again, at page 81: '' If the trunk had been lost or destroyed in transit, or after it had reached its destination, and before the plaintiff had had a reasonable opportunity to gain possession of the same, the measure of damages would, undoubtedly, have been the value of the goods at the point of delivery, subject to the conditions of the contract of carriage, whatever those might have been. Faulkner

v. Hart, 82 N. Y. 413-418, and authorities there cited. Whenever special or extraordinary damages, such as would not naturally or ordinarily follow a breach, have been awarded for the non-performance of contracts, whether for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to the peculiar circumstances known to both, and the particular loss had been in contemplation of both at the time of making the contract, as a contingency which might follow the non-performance. Citing Baldwin v. U. S. Telegraph Co., 45 N. Y. 744, and authorities there cited; Primrose v. Western Union Telegraph, 154 U. S. 1-29.''

In Wehle v. Haviland, 69 N. Y. 448, which was an action of trespass for entering upon the plaintiff's premises and unlawfully taking away her stock of goods, the rule of damages was thus stated: '' The plaintiff was entitled to recover so much as would repair the injury sustained by the wrong-doing of the defendants, and that was the money value of the goods at the time and interest thereon. The money value is the price at which they could be replaced for money in the market, and hence the inquiry is as to the market value of the goods when they have a market value. * * * It is well settled that in actions for the conversion of goods, or for the non-delivery of goods or chattels upon contract, unearned and speculative profits will not be included as a part of the damages to be recovered. Citing Blanchard v. Ely, 21 Wend. 342; Boyd v. Brown, 17 Pick. 453; Smith v. Cowdry, 1 How. [U. S. R.] 28; Griffin v. Colver, 16 N. Y. 489. The retail value, or the price at which goods are sold at retail, includes the expected and contingent profits, the earning of which involves labor, loss of time and expenses, supposes no damages to or depreciation in the value

of the goods, and is dependent upon the contingency of finding purchasers for cash, and not upon credit, within a reasonable time, the sale of the entire stock without the loss by unsalable remnants, and the closing out of a stock of goods as none ever was, or ever will be closed out, by sales at retail at full prices. * * * The plaintiff was entitled to compensation, and that consisted of the market value of the goods, their cost, or what they would have cost in the market and interest thereon, and nothing more.''

The learned counsel for the defendant, in a brief which displays unusual industry and research, has suggested and discussed other grounds for reversal; but we deem it unnecessary to consider them, for the reason that the errors already pointed out call for a reversal of the judgment.

Judgment reversed, with costs.